■ LEONARD SPANO, as Administrator of the Estate of MARK A. SPANO, Deceased, Appellant, v COUNTY OF ONONDAGA et al., Respondents.—Order and judgment reversed on the law with costs and new trial granted. Memorandum: The trial court erred in deciding that plaintiff did not establish a prima facie case of negligence. The central issue at trial was whether defendant Deputy Sheriff caused decedent to lose control of his vehicle by shining a 75,000-candlepower spotlight into the rear window of the vehicle. The trial court, after reserving decision of defendant's motion to dismiss at the close of plaintiff's case and then granting the motion at the close of defendant's proof, found that "there is no evidence from which it can be reasonably inferred that the deputy's spotlight reflected in the decedent's rear view mirror could blind the driver, thus causing the accident." We disagree.

It is well settled that a plaintiff is entitled to the most favorable view of the evidence and that there must be no rational basis whereby the jury might find in favor of a plaintiff before a trial court may dismiss a complaint at the

close of the evidence presented *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241). There may be more than one proximate cause of a plaintiff's injuries and a plaintiff need not exclude every other possible cause of injury to recover *(Humphrey v State of New York,* 60 NY2d 742, 744). It is sufficient that facts and circumstances are shown from which causation reasonably may be inferred *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, *rearg denied* 52 NY2d 829; *Bolte v City of New York,* 22 NY2d 817). Moreover, this being a wrongful death case, the plaintiff is held to a lesser standard of proof since the decedent is unavailable to recount his version of the events *(Noseworthy v City of New York,* 298 NY 76). Since there could be differing views as to when the Deputy turned on the spotlight, how long he kept it on and how close his car was to decedent's car during this period of time, the court should have allowed the case to go to the jury. *(See, O'Neil v Port Auth.,* 111 AD2d 375, 376; *Horne v Metropolitan Tr. Auth.,* 82 AD2d 909, 910.)

The only direct testimony regarding where, when and for how long the spotlight was turned on came from defendant Deputy McAvoy and, implicit in the court's findings is that his testimony was credible. Issues of credibility, however, are for the jury. McAvoy testified that he turned on his spotlight for 1 to 3 seconds somewhere past the Church Road intersection which is approximately 1.9 miles from the tree plaintiff's decedent's vehicle struck. How far past the intersection McAvoy was when he turned on the spotlight and at what point he turned it off, were key questions of fact for the jury to resolve. Deputy McAvoy also testified that he never saw decedent's car hit the tree. The preponderance of the evidence, however, places McAvoy's car only five seconds or approximately 500 feet behind the decedent's car at the time it collided with the tree. At this point, McAvoy would have had a clear view of decedent's car and the tree. Thus, McAvoy's credibility was put in issue, as was the possibility that the spotlight remained on longer than three seconds.

Three hours after the accident, McAvoy gave a detailed sworn statement to an investigator hired by the Sheriff reciting his version of the events preceding the accident. The document itself clearly demonstrates that before he executed it, he carefully and thoroughly reviewed it because he initialed it several times where he chose to make handwritten corrections. The affidavit recites that McAvoy turned on his spotlight and focused it on the rear window of the pursued vehicle at a point near the Church Road intersection but

before the vehicle drove over a railroad crossing north of Kellogg Road. Nowhere in this affidavit, however, does Mc-Avoy state when, if ever, he turned off the spotlight.

Moreover, the record reveals that four days following the accident the investigator prepared a "Follow up Investigation" report "to clarify information" in the statement the investigator had taken from McAvoy the day of the accident. This supplemental report included McAvoy's explanation that he turned off the spotlight at some point after decedent's car passed the intersection because McAvoy claimed he could not concentrate simultaneously on controlling the spotlight and driving his vehicle. This was the first reference to when McAvoy may have turned *off* the spotlight and the investigator acknowledged that McAvoy never stated in terms of minutes or seconds exactly how long the spotlight was turned on. It would not have been illogical or unreasonable for the jury to infer that the police, having reviewed McAvoy's original affidavit and realizing it omitted any mention of when he turned *off* the spotlight, may have directed their investigator to prepare the supplemental report to fill this void. The jury could further conclude that by attributing the correction for the omission to the investigator rather than having McAvoy himself supplement his prior statement, the police attempted to minimize this critical omission by characterizing it as merely a clerical or transcription error.

Plaintiff's claim at trial, based upon expert witnesses including an optometrist and an accident reconstruction expert, was that the jury could reasonably infer that the decedent had control of his vehicle until Deputy McAvoy negligently shone the spotlight into it. Moreover, even defense counsel acknowledged that the effect of a shining light in a rear-view mirror is a question within the knowledge and province of the jury. In sum, the record in this case contains sufficient evidence of negligence for submission of that issue to the jury and, accordingly, the court erred in directing a verdict for the defendant *(Sagorsky v Malyon,* 307 NY 584, 586; *McDonald v Metropolitan St. Ry. Co.,* 167 NY 66, 69-70).

All concur, except Boomer and Davis, JJ., who dissent and vote to affirm, in the following memorandum:

Boomer and Davis, JJ. (dissenting). We agree with the trial court that plaintiff failed to establish a prima facie case of negligence. It is true that "in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence" *(Noseworthy v City of New York,* 298 NY 76, 80).

However, *"Noseworthy,* and similar cases, describe a method of, or approach to, weighing evidence, but there must be a showing of facts from which negligence may be inferred." *(Wank v Ambrosino,* 307 NY 321, 324; *see also, Carter v County of Erie,* 98 AD2d 963; *Agius v State of New York,* 50 AD2d 1049.)

Under *Noseworthy,* the burden of proof of negligence and causation is not shifted *(Peterson v Ballantine & Sons,* 205 NY 29). Plaintiff must still make out a prima facie case by showing facts and conditions from which the negligence of defendant and causation can be reasonably inferred *(Wank v Ambrosino, supra,* at 323-324). It is well settled that where an accident is one that might occur from causes other than defendant's negligence, the inference of his negligence is not fair and reasonable *(Cole v Swagler,* 308 NY 325, 331). "Speculation, guess and surmise, however, may not substituted for competent evidence, and where, as here, there are several possible causes of an accident, one or more of which a defendant is not responsible for, a plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which the defendant was responsible *(Stuart-Bullock v State of New York,* 38 AD2d 626, affd 33 NY2d 418, and cases cited therein)." *(Agius v State of New York, supra,* at 1050.)

Here, plaintiff's theory that the accident was caused by the act of the Deputy Sheriff of shining the spotlight in the rear window of decedent's automobile is based upon speculation. The only evidence that the Deputy shone the spotlight into the rear window was based upon the testimony of the Deputy at an examination before trial in which he said that he turned the spotlight on at a point 1.6 miles distant from the point at which the car passed over railroad tracks and left the road, and that it was on for only 1 to 3 seconds. The optometrist who testified on behalf of plaintiff's decedent did not state his opinion that plaintiff was blinded by the spotlight, but testified only that if the spotlight was pointed at the rear window, the driver, if the conditions were all correct, would have a blind spot and would have a difficult time seeing for a couple of minutes. He said, however, that this opinion was based upon the assumption that the driver continued to look into the rear-view mirror for the full 1 to 3 seconds that the spotlight was on. It was also based on the assumption that the mirror was adjusted at the right angle and was not switched to the night position.

Plaintiff's traffic reconstruction expert did not express any

opinion concerning the cause of the accident but testified only that the critical speed of the curve in the road at the location of the accident was 114 miles per hour. This meant only that it was physically possible for a car to negotiate the curve at that speed, not that it could do so safely. He also testified that the car was traveling from 86 to 95 miles per hour when it struck the tree off the side of the road and that it was going faster before it left the road, since it traveled some distance off the road in a yaw before striking the tree. Further, he testified that the fact that the car, traveling at a high rate of speed, had passed over some railroad tracks, which crossed the road at an acute angle, could have been one of several reasonable hypotheses for the accident. The railroad tracks, he said, would necessarily have caused a misalignment of the car with respect to the road, and he would expect the misalignment to be to the left, the direction in which the decedent's car angled as it left the road. Further, he admitted that the driver attempted to steer around the curve and the car went into a yaw as it traveled around the curve, but off the road.

Here, the inference of defendant's negligence is not fair and reasonable because the accident was one that might well have occurred from causes other than defendant's negligence (see, Cole v Swagler, supra, at 331). Based upon the proof submitted by plaintiff, including the distance traveled by the decedent's car after the light was shone into the rear window and before it left the roadway and its excessive speed as it crossed the railroad tracks and as the driver attempted to negotiate the curve in the road, the inference that the accident was caused by the spotlight is unreasonable.

The issue here is not one of credibility as the majority suggests. The issue is the sufficiency of proof on the plaintiff's case. Even if the jury were to disbelieve the testimony of the Deputy Sheriff, as introduced on plaintiff's case, it would have no basis other than speculation to infer that the spotlight was shone into the back window of the car at any location closer than 1.6 miles from the point it struck the railroad tracks and went off the road. Moreover, from plaintiff's proof the jury could only speculate that decedent continued to look into the mirror for a full 1 to 3 seconds while he was traveling along a two-lane road at speeds approaching or in excess of 100 miles an hour.

The majority holds that a jury would be entitled to infer that the Deputy Sheriff continued to shine the spotlight into the rear window of decedent's automobile until it traveled to the point where decedent lost control. It is well established

that "[t]he fact or facts upon which it is sought to base an inference must be proved and not left to rest in conjecture, and when proved, it must appear that the inference drawn is the only one that can fairly and reasonably be drawn from the facts and that any other explanation is fairly and reasonably excluded." (PJI 1:70.) Here there are no facts from which the jury could reasonably infer that the spotlight was on at or near the location that decedent lost control. Moreover, the inference that he lost control because of the spotlight was not the only explanation for the cause of this accident. Any verdict based upon this theory would rest solely upon conjecture. (Appeal from order and judgment of Supreme Court, Onondaga County, Lynch J.—dismiss complaint.) Present— Dillon, P. J., Doerr, Boomer, Green and Davis, JJ.