JOANNE B. HOLIDAY, Individually and as Administratrix of the Estate of MICHAEL BOCCIA, Deceased, and on Behalf of the Next of Kin of MICHAEL BOCCIA, Deceased, Appellant, v HUNTINGTON HOSPITAL et al., Respondents.

Second Department, December 24, 1990

## APPEARANCES OF COUNSEL

*Stephen I. Widlitz, P. C. (Sandra K. Janin* of counsel), for appellant.

*Furey, Furey, Lapping, Keller, O'Reilly & Watson, P. C. (Steven D. Jannace* of counsel), for Huntington Hospital, respondent.

*Rivkin, Radler, Dunne & Bayh (Evan H. Krinick* and *Carol R. Finocchio* of counsel), for Harold Paradis, respondent.

*Kelly, Rode, Kelly & Burke (John D. Kelly, John Kenneth Rode* and *George J. Wilson* of counsel), for Elbert Close, respondent.

### OPINION OF THE COURT

KUNZEMAN, J.

The question presented in this wrongful death action based on medical malpractice is whether the charge given by the trial court properly drew a distinction between "factual issues" and "medical issues" so as to permit application of the holding in *Noseworthy v City of New York* (298 NY 76) to the former but not to the latter. In our view, this question must be answered in the affirmative.

On May 21, 1979, at about 7:00 P.M., the plaintiff's decedent, Michael Boccia, was in his backyard mixing chemicals with which to clean his swimming pool. Approximately five minutes later, there was an explosion and Michael ran into the house covered with a white powdery substance, screaming that he could neither see nor breathe. His mother hosed him down with water and he was subsequently admitted to the emergency room of the defendant Huntington Hospital (hereinafter the hospital) at about 7:30 P.M. It appeared that one of the chemicals which Michael had been mixing was called "Marathon Shock" which, when mixed with water or some other chemical, exploded and released chlorine.

One of the factual issues involved was the standard of medical care afforded to Michael, who died at 10:15 P.M. There was conflicting testimony as to what occurred after his admission to the hospital. For example, some witnesses saw him being treated in the hallway, whereas others stated that he was in a treatment room. In addition, there was a conflict as to whether he complained of or displayed breathing difficulties and as to when oxygen was administered.

It was undisputed that Michael's eyes were irrigated and that burns on his arm were treated with a solution. Although Michael was admitted to the defendant hospital at 7:30 P.M.,

the weight of the testimony suggested that oxygen was not administered until approximately 8:25 P.M. by nasal tube.

During the nonbifurcated trial, the plaintiff presented expert testimony which suggested that the failure of the defendants to give oxygen to Michael prior to 8:25 P.M. did not comport with accepted medical standards and significantly contributed to his death. Such evidence suggested that the decedent's condition could have been reversed if this measure had been adopted. However, the plaintiff's experts agreed with the cause of death as set forth in the autopsy report, that is, fluid in the lungs caused by irritation of the lining of the lungs.

The defendants' experts, including the Medical Examiner who wrote the autopsy report, uniformly agreed that, because the decedent had inhaled a lethal concentration of chlorine during the explosion, the irritation of the lining of the lungs coupled with the fluid prevented oxygen from entering the blood. Hence, it was their opinion that (1) it did not matter whether oxygen was administered since, even though it may have entered the lungs, it could not perfuse into the blood, and (2) the initial injury was, therefore, irreversible.

The trial court charged the jury, *inter alia,* as follows:

"Now, on the medical issues in this particular case, and I am just going to allude to them in no particular order and you are not to ascribe any particular importance to the order in which or which I have selected or they come to mind. The plaintiff has the burden of proving by a fair preponderance of the evidence the medical issues; for example, the issue [of] Valium, whether or not that was appropriate or not, the failure to intubate at a particular time, the number of physicians or staff in the emergency room, whether or not the conditions in terms of the fluid leakage into the alveolar spaces, whether that was reversible, all of these medical issues the plaintiff must prove them by a fair preponderance of the credible evidence.

"Now, the Plaintiff has another burden of proof with respect to certain factual issues, and this is based on logic, and it deals with those items which the decedent is not here to controvert or to offer testimony to. For example, was he in fact cold? And was he cold and, therefore, his nailbeds were cyanotic? Or did he have difficulty in breathing when he first arrived or did it start at some time thereafter? Or did he have difficulty in breathing, for example, when Dr. Close examined

him on the two occasions before the third time when he was intubated? With respect to these items, the burden of proof * * * is still by a fair preponderance of the credible evidence, but * * * you can give the decedent the benefit of the doubt if you can't make up your mind, because he is not here to speak for himself, so he is not held to as high a degree of weight or materiality or probative force that the proof has on your minds in proving these items".

We find no reversible error in the court's charge.

In *Noseworthy v City of New York* (298 NY 76, *supra)* the decedent, having somehow descended from a subway platform to the train tracks a few feet below, was struck by a subway train and died a few hours later. At trial, there was no testimony as to how the decedent got on the tracks or as to whether he was conscious or unconscious when struck. The only witness was the defendant's motorman, who testified that he saw nothing in the way of the train until the body became visible on the tracks, only 10 feet from the oncoming cars. He applied his brakes immediately and completed an emergency stop within 15 feet. However, the wheels of the first car had passed over the decedent's body.

The Court of Appeals held that the trial court erred in refusing to instruct the jurors that: " 'in a death case such as this, the plaintiff is not held to the high degree of proof required in a case where the injured person may take the stand and give his version of the happening of the accident' " *(Noseworthy v City of New York, supra,* at 80).

The purpose of this oft-cited rule is to circumvent the situation where "a tort-feasor who inflicts personal injury [would] be insulated from liability simply because the injuries so produced are fatal" *(Boulos v State of New York,* 56 NY2d 714, 716 [Fuchsberg, J., dissenting]) and "the decedent, who would have been in the best position to describe the event from plaintiff's point of view, [is] unavailable to do so" *(Boulos v State of New York, supra,* at 716 [Fuchsberg, J., dissenting]).

In *Wank v Ambrosino* (307 NY 321, 324) the Court of Appeals explained that the intent of the *Noseworthy* doctrine is to "describe a method of, or approach to, weighing evidence". Consistent with this view, we have previously stated that: "The rationale for the so-called *Noseworthy* doctrine is that due to the plaintiff's inability to testify, which may have been caused by the defendant, the bulk of the evidence adduced at trial will be circumstantial *(Horne v Metropolitan Tr.*

*Auth.,* 82 AD2d 909). However, this lesser degree of proof pertains to the weight which the circumstantial evidence may be afforded by the jury, not to the standard of proof the plaintiff must meet" *(Oginski v Rosenberg,* 115 AD2d 463).

This court has applied the "weighing evidence" rationale in cases where there are no surviving eyewitnesses to the occurrence which resulted in the death. It has been held that "in a wrongful death action, where there are often no surviving eyewitnesses to the occurrence which resulted in the death, circumstantial evidence may be afforded a greater degree of weight than in cases where there are eyewitnesses who can testify to the occurrence in question" *(Horne v Metropolitan Tr. Auth.,* 82 AD2d 909, 910, *supra).*

Stated succinctly, the language in the *Wank, Horne* and *Oginski* cases *(supra),* recognized that *Noseworthy* does not actually effect a diminution of the standard or quantum of proof as such. The standard continues to be proof by a preponderance of the credible evidence. The doctrine's sphere of operation is in the weight to be assigned to circumstantial evidence concerning disputed facts because the more direct and proper source of this evidence no longer exists.

When the charge in the instant case is analyzed pursuant to this line of authority, we find no error in its application *(see, Greer v Ferrizz,* 118 AD2d 536). While the courts have historically approached the *Noseworthy* doctrine in an "all or nothing" manner in which the doctrine has either been applied or not applied to the entire case, we find nothing objectionable in the trial court's approach in applying the doctrine to only a portion of the case under the facts at bar.

The charge as given invited the jury, quite properly, to weigh only such factual testimony as the decedent might have testified to, had he lived, according to the *Noseworthy* standard. The only evidence which Michael could have given, as properly noted by the Supreme Court, covered the burning of his eyes and torso, his difficulty in breathing and the time when oxygen was administered to him.

The plaintiff's contention that the charge confused the jury is unavailing. A substantial portion of the testimony adduced at trial was by experts whose testimony mainly concerned whether the inhalation injury suffered was irreversible and whether anything done at the hospital could have made a difference as to the outcome. Much of this testimony was couched in medical terminology and was clearly distinguish-

able from the other testimony which related to the explosion and what occurred at the hospital. While it is true that "a charge that confuses and creates doubts as to the principles of law to be applied requires a new trial" *(Cumbo v Valente,* 118 AD2d 679), it cannot be said that the clear terms of the charge at bar fell into this category by creating doubts or containing inadequate or contradictory statements of law.

Finally, we disagree with the plaintiff's contention that the verdict exonerating the defendant Dr. Elbert Close was against the weight of the evidence since we cannot say that the jury could not have reached this determination on any fair interpretation of the evidence *(see, Nicastro v Park,* 113 AD2d 129). Accordingly, the judgment in favor of the defendants must be affirmed.

LAWRENCE, J. P., KOOPER and HARWOOD, JJ., concur.

Ordered that the judgment is affirmed, with one bill of costs.