Bolin v Goodman (2018 NY Slip Op 02920)





Bolin v Goodman


2018 NY Slip Op 02920


Decided on April 27, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 27, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, LINDLEY, DEJOSEPH, AND CURRAN, JJ.


127 CA 17-01336

[*1]DANTA MARIE QUINTON BOLIN, AS EXECUTRIX OF THE ESTATE OF JOHN ALAN BOLIN, DECEASED, PLAINTIFF-APPELLANT,
v
DANIEL C. GOODMAN, M.D., DEFENDANT-RESPONDENT. 






MARK D. GORIS, CAZENOVIA, FOR PLAINTIFF-APPELLANT. 
MARTIN, GANOTIS, BROWN, MOULD & CURRIE, P.C., DEWITT (DANIEL P. LARABY OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Oneida County (Patrick F. MacRae, J.), entered October 5, 2016. The order granted defendant's motion for a directed verdict at the close of plaintiff's proof. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, defendant's motion for a directed verdict is denied, the complaint is reinstated and a new trial is granted.
Memorandum: Plaintiff commenced this medical malpractice and wrongful death action seeking damages arising from the death of her husband (decedent), who died from cardiac arrhythmia three days after seeing defendant, his primary care physician. The matter proceeded to trial, at which the disputed issues were whether defendant recognized the severity of decedent's condition and, if so, whether he conveyed that severity to decedent before decedent "declined" to go to the hospital. Supreme Court granted defendant's motion for a directed verdict at the close of plaintiff's proof, and we now reverse.
"It is well settled that a directed verdict is appropriate where the . . . court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party . . . In determining whether to grant a motion for a directed verdict pursuant to CPLR 4401, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in [the] light most favorable to the nonmovant" (Brenner v Dixon, 98 AD3d 1246, 1247 [4th Dept 2012] [internal quotation marks omitted]; see generally Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]). Here, accepting plaintiff's evidence as true and affording plaintiff every favorable inference that may reasonably be drawn from the facts presented at trial, we conclude that there is a rational process by which the jury could have found in plaintiff's favor (see Brenner, 98 AD3d at 1248; cf. Szczerbiak, 90 NY2d at 556).
Plaintiff presented evidence that decedent was a family man who was well-attuned to his cardiac health, having lost his father to a sudden cardiac incident. When presented with the possibility of a heart-related issue, decedent had no problem going to a hospital emergency room, which he did only a month before his death. On Friday, September 3, 2010, plaintiff presented to defendant complaining that the day before he had been unable to walk the length of his driveway without stopping three times for shortness of breath, a driveway he normally traversed without incident. Decedent also complained that on the morning of his appointment he was sweating profusely and felt pressure in his chest when he attempted to climb a ladder.
Defendant and plaintiff's medical expert both testified that such evidence established that decedent was suffering from unstable angina, i.e., a life-threatening acute coronary condition, [*2]which was described as a "ticking package that could blow up at any time." The testimony at trial established that unstable angina, which carried with it an imminent risk of a fatal cardiac episode if left untreated, was "highly treatable" and a "completely preventable death." Plaintiff's expert testified that it would be a breach of the standard of care for any physician to fail to recognize the severity of decedent's condition and, further, to fail to convey the severity of that condition to the patient.
Defendant testified at trial that he recognized the life-threatening condition and conveyed to decedent "that he should go to the hospital" (emphasis added). Defendant further testified that he knew that "there needed to be more testing done," but that decedent "adamant[ly]" "refused" to go to the hospital and "didn't give [defendant] a good reason why." Defendant's notes, however, do not reflect any urgency. Indeed, the only notation made by defendant concerning that conversation was, "Discussed admit on Fri of holiday [weekend], declined."
Moreover, despite the fact that defendant claimed to have recognized the severity of decedent's condition, he did not set up any follow-up appointment with a cardiologist for over five days and admitted that he was "surprised" to learn of decedent's death three days after his appointment with decedent. Defendant thereafter consulted with a cardiologist, who "didn't really say very much at that point."
Plaintiff's expert, a board certified internist and cardiologist, testified that the standard of care was to "inform the patient that they have an immediate life-threatening condition . . . [Y]ou can experience sudden death at any point. If you go home, you could die walking into the house. Die in your sleep. Die in your shower. That it is a completely preventable death and that the only reasonable medical course is to call 911 because that patient could die driving to the hospital." If the patient refuses hospitalization, the doctor must discern the reason why the patient is refusing in an effort to make sure the patient fully understands the severity of his or her condition.
Plaintiff's expert further testified that all the details of that conversation, i.e., the severity of the condition and the reason for the refusal, should be documented. Defendant's note was, in the expert's opinion, not reflective of the level of urgency that should have been conveyed to decedent, which meant that defendant either did not understand the severity of the condition or did not convey the severity of the condition to decedent. If that information was not conveyed to decedent, the expert opined that it was a substantial factor in decedent's death. Finally, the expert opined "within a reasonable degree of medical certainty" that, had decedent gone to the hospital on September 3, 2010, "he would have survived this. He would have been treated."
As with most wrongful death cases, this case is complicated by the death of decedent, the only person who could have directly refuted defendant's factual testimony. The Noseworthy doctrine thus provides that in a wrongful death case, such as this, "a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence" (Noseworthy v City of New York, 298 NY 76, 80 [1948]; see Holiday v Huntington Hosp., 164 AD2d 424, 427 [2d Dept 1990]). The doctrine "applies only to such factual testimony as the decedent might have testified to, had [he or she] lived' " (Casey v Tan [appeal No. 2], 255 AD2d 900, 900 [4th Dept 1998]), and the "lesser degree of proof pertains to the weight which the circumstantial evidence may be afforded by the jury, not to the standard of proof the plaintiff must meet" (Oginski v Rosenberg, 115 AD2d 463, 463 [2d Dept 1985], lv dismissed 75 NY2d 991 [1990]). 
Here, the only direct testimony regarding whether defendant recognized the severity of decedent's condition and explained that to him "came from defendant . . . and, implicit in the court's findings is that his testimony was credible. Issues of credibility, however, are for the jury" (Spano v County of Onondaga, 135 AD2d 1091, 1092 [4th Dept 1987], appeal dismissed 71 NY2d 994 [1988]). We agree with plaintiff that there are issues with respect to defendant's credibility, and those issues should not have been determined by the court. In our view, this is not a case in which there is "absolutely no showing of facts from which negligence may be inferred" (Mildner v Wagner, 89 AD2d 638, 638 [3d Dept 1982]), and we thus conclude that the court erred in granting defendant's motion for a directed verdict.
We therefore reverse the order, deny defendant's motion, reinstate the complaint, and [*3]grant a new trial.
Entered: April 27, 2018
Mark W. Bennett
Clerk of the Court