Tyrell v Pollak (2018 NY Slip Op 05251)





Tyrell v Pollak


2018 NY Slip Op 05251


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

525957

[*1]JEFFREY TYRELL, as Administrator of the Estate of WILLIAM TYRELL, Deceased, Respondent,
v
ABRAHAM POLLAK, Appellant.

Calendar Date: May 29, 2018

Before: Garry, P.J., McCarthy, Clark, Rumsey and Pritzker, JJ.


Bailey, Johnson, DeLeonardis & Peck, PC, Albany (Thomas J. Johnson of counsel), for appellant.
Abdella Law Offices, Gloversville (Robert Abdella of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeals (1) from a judgment of the Supreme Court (Tomlinson, J.), entered March 27, 2017 in Fulton County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered March 27, 2017 in Fulton County, which, among other things, denied defendant's motion to set aside the verdict.
On the evening of September 3, 2013, William Tyrell (hereinafter decedent) was discovered unconscious, lying in a pool of his own blood, at the base of an exterior staircase leading from a two-family residential property owned by defendant. Decedent was thereafter taken by emergency responders to the hospital, where it was ultimately determined that he suffered from a fractured skull, subdural hematoma and cerebral contusion. In the weeks and months that followed, decedent underwent various procedures to address his injuries, as well as complications that arose therefrom. In December 2013, decedent commenced this negligence action alleging that defendant breached his duty to exercise reasonable care in maintaining the property by allowing the exterior staircase "to deteriorate and to remain in a deteriorated condition" and that such breach caused decedent to fall and sustain severe physical injury. Defendant answered, denying the allegations and asserting various affirmative defenses. Shortly thereafter, decedent passed away from complications resulting from his injuries. Plaintiff, [*2]decedent's son, was subsequently appointed as the administrator of decedent's estate and the caption of this action was amended accordingly.
The matter proceeded to a jury trial in January 2017. Supreme Court denied defendant's motion for a directed verdict, made at the close of plaintiff's proof and again at the close of all of the proof,[FN1] and the case was ultimately submitted to the jury. Following deliberations, the jury found that defendant's negligence had been a substantial factor in causing decedent's injuries and awarded plaintiff damages for pain and suffering in the amount of $325,000. Defendant then moved for an order pursuant to CPLR 4404 (a) dismissing the complaint as a matter of law for the failure to submit evidence of the cause of the fall or, alternatively, directing a new trial on the basis that Supreme Court gave an improper jury charge. Following oral argument, Supreme Court issued a bench decision, which was subsequently reduced to a written order, denying defendant's motion in its entirety. Supreme Court thereafter entered judgment in favor of plaintiff. Defendant now appeals from the judgment, as well as the order denying his CPLR 4404 motion.
Defendant challenges the jury verdict as being unsupported by sufficient evidence, arguing that plaintiff could not establish the cause and location of decedent's fall and, therefore, any finding of causation would have been improperly based upon speculation. There were no witnesses to decedent's fall and, although decedent made some statements regarding the fall to emergency responders, decedent's injuries and eventual death rendered him unable to testify — either at a deposition or at trial — as to the meaning of those statements and the circumstances under which he fell. Accordingly, plaintiff had to rely entirely on circumstantial evidence to establish that defendant's negligence was the proximate cause of decedent's fall. In doing so, plaintiff was not "required to rule out all plausible variables and factors that could have caused or contributed to the accident" (Gayle v City of New York, 92 NY2d 936, 937 [1998]; see Schneider v Kings Hwy. Hosp. Ctr., 67 NY2d 743, 744 [1986]). Rather, plaintiff had to prove that defendant's negligence was the more likely cause of decedent's fall than any other potential cause (see Gayle v City of New York, 92 NY2d at 937; Pascucci v MPM Real Estate, LLC, 128 AD3d 1206, 1206 [2015]; Timmons v Benjamin, 77 AD3d 1254, 1256 [2010]). Plaintiff's proof had to "render other causes sufficiently remote such that the jury [could] base its verdict on logical inferences drawn from the evidence, not merely on speculation" (Timmons v Benjamin, 77 AD3d at 1256; see Acton v 1906 Rest. Corp., 147 AD3d 1277, 1278 [2017]; Brumm v St. Paul's Evangelical Lutheran Church, 143 AD3d 1224, 1227 [2016]).
The evidence presented at trial, including photographs taken of the steps shortly after the incident, indisputably established that the exterior staircase suffered from numerous deficiencies and was in a general state of disrepair, with missing or broken chunks on several different steps. Both the upstairs tenant and defendant's property manager testified that the stairs had been crumbling over time and that small, broken off pieces of concrete could be routinely found on the stairs. The upstairs tenant testified that she consistently swept the concrete debris off the stairs, but that inevitably more concrete chips would appear. Plaintiff's expert, a certified code enforcement official experienced in "construction technology," testified that concrete pieces, like any other type of debris, would pose a tripping hazard to anyone who traversed the steps, and that the Property Maintenance Code of New York State, to which all existing residential structures are subject (see generally 19 NYCRR 1226.1), required the stairs to be free [*3]of debris. The photographs and testimony more specifically established that the sixth and seventh steps from the bottom — which had been poorly repaired two years prior to decedent's fall — were severely corroding and in the worst overall condition. Furthermore, plaintiff, the upstairs tenant and the property manager each testified that, following the accident, a large chunk of concrete was missing from the nosing of one of the steps. Significantly, plaintiff testified that, prompted by a conversation he had with decedent on the day after the accident, he drove to the property and photographed this step. The property manager testified that he did not believe that the nosing was broken when he had last traversed the stairs a week or two earlier. Plaintiff's expert further testified that the staircase was not code compliant, as the tread depths and riser heights were inconsistent in dimension, and that such inconsistency could cause a person to lose his or her balance. The expert similarly testified that an incomplete stair nosing could also cause imbalance. Moreover, the evidence established that, adding to the already treacherous condition of the staircase, the area was poorly lit and that, as a result of tree overgrowth, the street light illuminated only the bottom few steps.
Plaintiff also offered evidence tending to eliminate other potential causes of the fall. In particular, plaintiff testified that decedent was "in pretty good health," had no known mental deficits, was able to go up and down stairs without issue and walked normally, albeit with a slight "wiggle" caused by injuries he had sustained in a motorcycle accident decades earlier. Plaintiff stated that he saw decedent the morning before the fall and that decedent did not appear to be ill or under the influence of medication. Similarly, the upstairs tenant — decedent's longtime family friend — testified that, prior to the fall, decedent was able-bodied and "pretty sharp." She stated that she had never seen decedent use a cane and that, although he always used the handrail, she had seen him successfully negotiate the staircase on numerous prior occasions. She averred that she and decedent had spent roughly an hour together before the fall and that decedent had not been drinking alcohol during their visit. In fact, she testified that she had never seen decedent drink alcohol. Finally, the upstairs tenant testified that decedent was wearing sneakers when he fell and that, at the time of the fall, the weather was "clear." In our view, despite being unable to establish the precise location of decedent's fall, the foregoing evidence provided a valid line of reasoning and permissible inferences that could lead a rational juror to conclude, without engaging in speculation, that defendant's negligence in maintaining the staircase was the more likely cause of decedent's fall than any other potential cause, such that a verdict in plaintiff's favor was not insufficient as a matter of law (see Pipp v Guthrie Clinic, Ltd., 80 AD3d 1014, 1015-1016 [2011]; see generally Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; compare Castellano v New York City Tr. Auth., 38 AD3d 822, 823 [2007]). To the extent that defendant also argues that the jury's verdict is against the weight of the evidence, we find that a fair interpretation of the evidence supports the jury verdict in favor of plaintiff (see generally Killon v Parrotta, 28 NY3d 101, 107-108 [2016]).
We are also unpersuaded by defendant's contention that Supreme Court erred in giving a jury charge based upon Noseworthy v City of New York (298 NY 76 [1948]), which — in cases where the alleged negligent act or omission resulted in death — imposes a lighter burden of persuasion on the plaintiff by allowing the jury "greater latitude in evaluating such factual issues as the decedent might have testified to had [he or she] lived" (PJI 1:61; see Imbierowicz v A.O. Fox Mem. Hosp., 43 AD3d 503, 507 [2007]; Holiday v Huntington Hosp., 164 AD2d 424, 428 [1990]). The theory behind the Noseworthy charge is "that it is unfair to permit a defendant who has knowledge of the facts to benefit by remaining mute in a wrongful death action where the decedent is unavailable to describe the occurrence" (Staples v Sisson, 274 AD2d 779, 780 [2000]; see Noseworthy v City of New York, 298 NY at 80-81; Bochnak v Mackes, 159 AD2d [*4]882, 884 [1990], lv denied 76 NY2d 706 [1990]). The charge, however, is inapplicable "where the plaintiff and the defendant have equal access to the facts surrounding the decedent's death" (Orloski v McCarthy, 274 AD2d 633, 634 [2000], lv denied 95 NY2d 767 [2000]; see Rockhill v Pickering, 276 AD2d 1002, 1003 [2000]; Gayle v City of New York, 256 AD2d 541, 542 [1998]).
Although decedent's fall was unwitnessed, we cannot say that plaintiff and defendant were on equal footing under the unique circumstances of this case. Decedent was unconscious when he was initially discovered at the base of the staircase. However, he eventually came to and, as recorded in the relevant medical records, made statements regarding the fall to emergency responders. As reflected in those records, which were admitted into evidence, decedent "stated that he was walking down stairs[,] lost his footing and slid down a couple steps" and that, although he did "not remember why he fell," he "did state that he did not fall down all the steps[,] just the last couple." Defendant used these ambiguous statements against plaintiff at trial to argue that the cause of decedent's fall was attributable to decedent's own carelessness, rather than any negligence on the part of defendant. It was clear from the record that, following the incident, decedent made further statements regarding the circumstances underlying his fall, which may well have explained his comments to emergency responders. However, decedent died before he had an opportunity to provide any testimony in this regard and, as decedent's out-of-court statements constituted inadmissible hearsay, plaintiff was precluded from introducing them at trial. Thus, by virtue of decedent's death, plaintiff was relegated to refuting defendant's characterizations of decedent's recorded statements and presenting an alternate explanation based only upon circumstantial evidence. Moreover, we note that a photograph depicting blood on a particular stair was apparently taken and subsequently lost by an investigator hired by defendant [FN2]. Under these circumstances, plaintiff and defendant were not on equal footing, and Supreme Court did not err in giving a Noseworthy charge (see generally Noseworthy v City of New York, 298 NY at 80-81; compare Kuravskaya v Samjo Realty Corp., 281 AD2d 518, 518 [2001], lv denied 96 NY2d 716 [2001]; Orloski v McCarthy, 274 AD2d at 634-635; Gayle v City of New York, 256 AD2d at 542).
Defendant's remaining arguments, to the extent not expressly addressed herein, have been examined and rejected.
Garry, P.J., McCarthy, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment and order are affirmed, with costs.



Footnotes

Footnote 1:Defendant did not call any witnesses on his own behalf.

Footnote 2:At oral argument on defendant's CPLR 4404 (a) motion, Supreme Court commented that it found the investigator, who testified that she had no memory of conducting the investigation despite having produced a report, to be wholly incredible. We do not disagree.