Stevens v State of New York (2024 NY Slip Op 51774(U))

[*1]

Stevens v State of New York

2024 NY Slip Op 51774(U)

Decided on November 12, 2024

Court Of Claims

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 12, 2024
Court of Claims

Richard Stevens as the Administrator of the 
 Estate of RICHARD CURTIS KELI'IAUKAI STEVENS aka RICHARD C. STEVENS, Claimant,

against
The State of New York, [FN1] Defendant.

Claim No. 132013

Claimant's attorney:
PATRICK S. OWEN, PLLC
By: Patrick S. Owen, Esq.
Defendant's attorney: HON. LETITIA JAMES
Attorney General for the State of New York
By: J. Gardner Ryan, Assistant Attorney General

Walter Rivera, J.

This claim
arises out of a tragic motor vehicle accident that occurred on June 26, 2018 at approximately 3:47 p.m. in the Town of Tuxedo, Orange County, New York, on State Route 17 at the intersection with Arden Valley Road (the intersection). Arden Valley Road leads directly to and through Harrison State Park, which is part of the Palisades Interstate Park Commission. In the area of the accident, Route 17 is a four-lane, curved roadway, with two southbound lanes and two northbound lanes, divided by a double yellow line. On the northbound curve of Route 17 approaching the intersection, the 55 mph speed limit was down posted to 50 mph (Ex. 1).
On the date of the accident, claimant's 28-year-old son, Richard C. Stevens, was approaching the intersection on his Suzuki motorcycle in the northbound right lane of Route 17. In the southbound left lane of Route 17, John M. Cusimano, who was 17 years old, was driving his father's two door Ford Mustang as he approached the intersection. Cusimano began his left turn from Route 17 before the end of the double yellow line and not within the gap between the two sets of double yellow lines intended for turning vehicles (Ex. A). As Cusimano proceeded through the intersection and across the northbound lanes of Route 17, Stevens' oncoming motorcycle struck the right front fender of the passenger's side of the Cusimano car. Stevens was thrown from the motorcycle and died as a result of the accident.[FN2]

A bifurcated trial addressing the issue of the State's liability was held on July 24 through July 26, 2024, August 8 through August 9, and August 21, 2024.
Claimant argued at trial that, inter alia, the State failed to follow its own mowing guidelines and was negligent in its duty to maintain the grass, brush and foliage along Route 17 so as to avoid obstructing the sight distances of motorists traveling on Route 17. Claimant further argued that, absent the State's negligent maintenance of the grass, brush and foliage along Route 17, Cusimano and Stevens would have seen each other approaching the intersection and [*2]would have had sufficient time and opportunity to take evasive action to avoid the accident.[FN3]

In opposition, the State argued that the tragic and unfortunate accident was not due to any negligence attributable to the State and that the State's alleged negligence was irrelevant because Cusimano's manner of driving was the sole proximate cause of the accident. Specifically, the State argued that Cusimano was an inexperienced and inattentive driver who failed to observe that which was readily observable with a proper use of his senses, i.e., Stevens approaching the intersection on his motorcycle. The State further argued that, had Cusimano made such observation before proceeding to make a left turn across the two northbound lanes of Route 17, the accident would not have occurred.
Cusimano testified at trial pursuant to a subpoena by the State. On the date of the accident, Cusimano and his friends were caravanning in three cars to Harriman State Park. After visiting the park, the three cars stopped behind each other on the northbound shoulder of Route 17 (Ex. 1). They all exited the cars to discuss their path home. They decided to return through the park and proceeded to make a u-turn across the double yellow lines of Route 17 to proceed southbound on Route 17. Cusimano was the third car following behind the other two cars. According to Cusimano, the first car stopped in the left southbound lane of Route 17, just before the end of the double yellow line and before the gap between the two sets of double yellow lines on Route 17 (Exs. 10-11). The first car stopped for approximately five seconds to observe if there was any oncoming northbound traffic on Route 17 before turning left at the intersection and proceeding across the two northbound lanes of Route 17 onto Arden Valley Road. The second car proceeded in a like manner. After the first two cars had turned left at the intersection and had reached Arden Valley Road, Cusimano then stopped on Route 17 "slightly before the break in the double yellow" line, at a maximum distance of two feet before the end of the double yellow line (Ex. 10; Trial Log Notes 7/26/24, 10:5:58). Cusimano testified that he stopped for five seconds to look for any oncoming traffic before he proceeded to turn left across the two northbound lanes of Route 17. He also testified that his view was not obstructed by any vehicles in front of him and that he could see approximately 400 to 500 feet ahead of him on Route 17. Cusimano maintained that he did not see any oncoming vehicles on Route 17 approaching the intersection and he proceeded to turn left at the intersection. 
Cusimano testified that he could not state the speed at which he was traveling, but that it was definitely less than 10 mph as he proceeded to turn left at the intersection. Stevens' motorcycle then struck the front fender of the passenger's side of the Cusimano car. Cusimano maintained that he never saw, nor heard, Stevens approaching the intersection on his motorcycle.
The Court notes that Brandon Copistrano, Cusimano's friend, who was a passenger in the car immediately ahead of Cusimano that had traveled through the intersection just prior to the accident, provided the Tuxedo Police Department with a written statement on the date of the [*3]accident (Ex. P). Copistrano's written statement provides that, as the car in which he was a passenger proceeded to turn left from Route 17 towards Arden Valley Road, Copistrano saw Stevens on his motorcycle "going fast" on Route 17 towards the intersection (id.). Copistrano then heard a bang, looked back, and saw that Cusimano's car and Stevens' motorcycle had impacted (id.). 
During cross-examination of Cusimano by claimant's counsel, Cusimano was shown a photograph of Route 17 depicting the direction that he had been traveling on the date of the accident (Ex. 3). The photograph was taken nine days prior to the accident. When claimant's counsel asked Cusimano if there was anything depicted in the photograph about the surrounding area that was different from what he had observed on the date of the accident, Cusimano replied, "I do not recall. I would imagine it would be very similar" (Trial Log Notes 7/26/24, 9:57:20). 
Claimant's counsel then asked Cusimano if he recalled his deposition testimony regarding Exhibit 3 as follows:
"Q: Is [Exhibit 3] a fair and accurate depiction of how it appeared as of the day of the accident?
A: I'm not certain.
Q: Do you know whether it changed in between June 17, 2018 [the date of the photograph] and the date of the accident [June 26, 2018]?
A: It looks like there was more growth after this photograph.
Q: So there was more growth as of the date of the accident than there is actually depicted in this photograph?
A: Correct"
(Ex. 39, pp 61-62).
Claimant's counsel then showed Cusimano additional photographs of Route 17 that were taken nine days prior to the accident and Cusimano testified that there was more growth of the grass, brush and foliage on the date of the accident than depicted in the photographs (Exs. 4, 5, 7, 10, 11). Additionally, Cusimano testified that the photographs appeared to have been taken from a vehicle with a higher vantage point than Cusimano's point of view from his car on the date of the accident. Cusimano also testified that on the date of the accident there was brush, tall grass, and foliage blocking his visibility of oncoming vehicles coming around the bend of Route 17 towards the intersection (Exs. 10-11). 
In addition to the numerous exhibits received into evidence, the Court also considered the portions of the deposition testimony presented at trial of Randall A. Mulkins, a New York State Department of Transportation (DOT) Highway Maintenance Supervisor 2 (Ex. 29), Michael K. Schaefer, P.E., a Regional Design Engineer for DOT, Hudson Valley Region (Ex. 30) and Richard M. Gaupman, P.E., a Transportation Maintenance Engineer 2 for DOT (Ex. 31). Both claimant and the State presented expert testimony at trial. Neither expert performed an accident reconstruction. 
Claimant's expert, Lawrence M. Levine, P.E., conceded that he did not know the speed at which Stevens was traveling on his motorcycle as he approached the intersection. With regard to Cusimano's speed, Levine opined that whether Cusimano had stopped on Route 17 before turning left towards Arden Valley Road or whether Cusimano had rolled into the turn at a speed of 5 to 10 mph, the cause of the accident was that Stevens and Cusimano became invisible to each other. Therefore, Levine maintained that neither Stevens nor Cusimano had sufficient [*4]sight distance, prior to impact, to take evasive action to avoid the accident. In that regard, Levine measured the sight distance at 338 feet from where the Cusimano car was located (Ex. 40). Levine went on to opine that the State was negligent in its maintenance of the grass, brush and foliage along Route 17, and that, absent the State's negligent maintenance, Stevens and Cusimano would have seen each other approaching the intersection and would have had sufficient time and opportunity to take evasive action to avoid the accident.
On cross-examination, Levine was confronted with the written statement of Brandon Copistrano that was given to the Tuxedo Police Department on the date of the accident and asked to explain why Copistrano could see Stevens on his motorcycle approaching the intersection prior to impact, while Cusimano could not see Stevens approaching. Levine responded that Copistrano was a passenger, in a different location from Cusimano, at a different point in time.
The State's expert, Nicholas Pucino, P.E., conducted an investigation of the accident which included a review of the photographs in evidence that were taken of the area of the accident nine days prior to the accident. Pucino testified that in his experience, grass, brush and foliage would not have grown significantly over a nine day period between the date when the photographs were taken and the occurrence of the accident. Additionally, Pucino conducted a site visit of the area of the accident on September 26, 2019, 15 months after the accident. Pucino did not take any photographs of the area at that time; however a video was taken of the area from his Jeep as he drove along the route taken by Cusimano on the date of the accident (Ex. F). 
The video depicts the sight distances from the Jeep, given the conditions of the grass, brush and foliage present when the video was taken. Pucino acknowledged that the view from his Jeep was higher than the view from the Mustang driven by Cusimano and that the grass, brush and foliage depicted in the video was not a representation of the condition of the grass, brush and foliage on the date of the accident as the State had presumably mowed and trimmed the area since the date of the accident.
With regard to the grass alongside Route 17, Pucino noted that the grass was not at the level of the road due to the bank of the Route 17 roadway and the slope of the shoulder. He explained that the ground where the grass grows is actually a foot below the line of sight of a southbound driver on Route 17 approaching the intersection with Arden Valley Road, as Cusimano had been traveling. Accordingly, a foot of grass would have no impact on the sight lines of motorists on Route 17. Pucino further explained that the grass would have to have grown one foot plus an additional three feet to have any impact on the sight lines of approaching motorists on Route 17. Thus, Pucino concluded that the grass could not have been a contributing factor to the cause of the accident.
Pucino also measured the brush line and then scaled and plotted the sight distances at the accident location, which was consistent with what was depicted on the video. The brush, grass and foliage depicted in Exhibit E was not of a degree that would obstruct a motorist's view inasmuch as Exhibit E also shows that the pavement is visible around the curve. Based upon the field measurements taken by Pucino, he opined that the sight distances for motorists traveling on Route 17 approaching the intersection were appropriate and met the applicable guidelines (Ex. II). 
Pucino noted that Cusimano had proceeded into his left turn towards Arden Valley Road prior to reaching the end of the double yellow line and not within the gap between the two sets of [*5]double yellow lines intended for turning vehicles. Therefore, Pucino concluded that Cusimano inhibited his own sight distance by not proceeding into the left turn at the end of the double yellow line and within the gap between the two sets of double yellow lines intended for turning vehicles. Pucino further opined that based upon his accident investigation and his measurements taken at the scene, if Cusimano had stopped at the end of the double yellow line and turned at the gap between the two sets of double yellow lines, then Cusimano would have had six seconds to proceed though the intersection and he would have had a little less time from where he stopped before the end of the double yellow line. Nonetheless, Pucino opined that sight distance was not a contributing factor to the cause of the accident as Cusimano did not use the available time he had to alter his driving and take evasive action to avoid the accident. In Pucino's opinion, Cusimano's sight distance, which Pucino measured at 466 feet from the point where a motorist would be stopped at the end of the double yellow line, was either obstructed by a vehicle "or he didn't look" as he had at least four seconds that he did not use to alter his driving (Trial Log Notes 8/9/24, 2:36:19-2:37:03). Therefore, Pucino concluded that Cusimano's manner of driving was the cause of the accident.
Pucino also noted that Copistrano, who was a passenger in the car traveling in front of Cusimano, saw Stevens approaching the intersection on his motorcycle as the car in which Copistrano was traveling proceeded to turn left towards Arden Valley Road. Looking at Exhibits M and I, Pucino opined that the crescent shape scuff mark depicted in the photographs indicated that the car that Cusimano was driving shifted to the left from the impact of Stevens' motorcycle.
Pucino opined that sight distance was not a contributing factor to the cause of the accident and that Stevens did not have any time or opportunity to take evasive action to avoid the accident.
Analysis
The State has a nondelegable duty to maintain its roadways in a reasonably safe condition and that duty encompasses the area adjacent to its roadways (see Gomez v New York State Thruway Auth., 73 NY2d 724 [1988]; Friedman v State of New York, 67 NY2d 271 [1986]; Weiss v Fote, 7 NY2d 579, 584 [1960]). The State, however, is not an insurer of the safety of its roadways and the mere happening of an accident does not render the State liable (see Tomassi v Town of Union, 46 NY2d 91 [1978]; Brooks v New York State Thruway Auth., 73 AD2d 767 [3d Dept 1979], affd 51 NY2d 892 [1980]). Rather, for liability to attach, it must be established that the State created a dangerous condition or had either actual or constructive notice of a potentially dangerous condition and failed to take reasonable measures to remedy such potential danger (see Friedman, 67 NY2d at 286; Schleede v State of New York, 170 AD3d 1400 [3d Dept 2019]).
In a wrongful death action where the decedent's inability to testify and describe the occurrence may have been caused by defendant's wrongdoing, a claimant may not be held to as high a degree of proof as an injured claimant who can describe the occurrence (see Noseworthy v City of New York, 298 NY 76, 80 [1948]; Horne v Metropolitan Tr. Auth., 82 AD2d 909 [2d Dept 1981]). The lesser degree of proof pertains only to the weight which the circumstantial evidence may be afforded and not to the standard of proof that claimant must meet (see Holiday v Huntington Hosp., 164 AD2d 424, 428 [2d Dept 1990]).
Here, the Court finds that the Noseworthy doctrine is applicable due to the inability of [*6]Stevens, who died as a result of the accident, to offer his version of the facts as to how the accident occurred and any contributing causes of the accident. Accordingly, the Court is afforded greater latitude in weighing the evidence presented and in drawing an inference of negligence from the evidence presented (see Prasarn v State of New York, 156 AD3d 1027 [3d Dept 2017]).

Notably, "even in a wrongful death case, '[s]peculation, guess and surmise, however, may not be substituted for competent evidence, and where . . . there are several possible causes of an accident, one or more of which a defendant is not responsible for, a plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which the defendant was responsible' " (Johnson v Sniffen, 265 AD2d 304 [2d Dept 1999] quoting Agius v State of New York, 50 AD2d 1049, 1050 [3d Dept 1975]; see also Scheer v City of New York, 211 AD2d 778 [2d Dept 1995]). 
The Court has carefully considered all the evidence presented and has accorded it the weight it deems appropriate. This includes the Court's assessment of the trial testimony which the Court listened to while observing the witnesses' demeanor as they testified. 
Upon listening to Cusimano testify in Court and observing his demeanor as he did so, the Court finds that Cusimano's demeanor detracted from his credibility. In that regard, Cusimano exhibited disdain in being subjected to questioning at trial by defense counsel, claimant's counsel, and in one instance, by the Court. 
Additionally, Cusimano's testimony appeared to be scripted and was not convincing. In that regard, Cusimano's testimony that he stopped on Route 17 for five seconds before proceeding to turn left at a speed of less than 10 mph, without seeing Stevens approaching on a motorcycle due to the grass, brush and/or foliage, was not worthy of belief and evidenced his inattentiveness to what was there to be seen.
Next, the Court finds that Cusimano's responses to the questioning by claimant's counsel regarding the condition of the grass, brush and foliage on the date of the accident as compared to the photographs taken nine days prior to the accident, were speculative and led the Court to conclude that Cusimano did not have any specific recollection of the condition of the grass, brush and foliage as it appeared on the date of the accident. In addition, the Court finds that Cusimano's testimony that on the date of the accident the grass, brush and/or foliage was much worse than depicted in the photographs taken nine days prior to the accident is also not credible. As previously noted, the Court also did not credit Cusimano's testimony that the grass, brush and/or foliage present on the date of the accident impacted his sight distance and was the cause of his failure to see Stevens approaching the intersection on his motorcycle prior to impact.
Notwithstanding the deposition testimony of DOT Highway Maintenance Supervisor Randall Mulkins that the grass had not been mowed since the fall of 2016, the Court is persuaded by the testimony of Pucino that the grass could not have been a contributing cause of the accident under the circumstances presented herein.
In sum, the Court finds that, upon consideration of all the evidence presented, claimant has failed to establish that the State's alleged negligent maintenance of the grass, brush and foliage along Route 17 was a contributing cause to the accident and Cusimano's failure to see Stevens approaching the intersection on the motorcycle (see Hearn v State of New York, 157 AD2d 883, 885 [3d Dept 1990] [The alleged negligence of the State was irrelevant because claimant's inattentiveness to the posted signs and the actual condition of the highway was the sole [*7]proximate cause of claimant's accident]). 
In this vein, the Court also finds that there was insufficient evidence to establish that the State's alleged negligent maintenance of the grass, brush and foliage along Route 17 obscured the sight distances of motorists on Route 17 (see Driscoll v State of New York, 160 AD3d 1240 [3d Dept 2018] [The alleged negligence of the State in having limited sight distances for drivers at an intersection was not found to be a proximate cause of a motor vehicle accident where the southbound driver attempting to turn left was struck by an oncoming northbound driver]).
While proof of prior accidents at the same location and under substantially similar circumstances may be offered on the issues of foreseeability of danger and notice, the record herein is devoid of any prior, similar accidents that were caused in whole or in part by a motorist's sight distance being inhibited by grass, brush and/or foliage as they proceeded on Route 17 towards the subject intersection (see Vizzini v State of New York, 278 AD2d 562, 563 [3d Dept 2000] [There was no history of similar accidents in the immediate area which would place the State on notice of a need for reconstruction or remediation of the culvert]; Martin v State of New York, 305 AD2d 784 [3d Dept 2003] [The number of prior accidents was insufficient to put the State on notice of a dangerous condition or to impose a duty to take remedial action]; Light v State of New York, 250 AD2d 988 [3d Dept 1998] [There was no evidence of an unusual number of accidents to support a finding that the State had notice of a dangerous condition requiring remedial action]).
In light of the absence of any similar accidents in the area of the accident prior to the accident in issue, the Court finds that the evidence failed to establish that the State created a potentially dangerous condition or had either actual or constructive notice of a potentially dangerous condition in the area of the accident (see Gray v State of New York, 159 AD3d 1166 [3d Dept 2018] [State did not have actual or constructive notice of a potential danger]; Gagliardi v State of New York, 148 AD3d 868 [2d Dept 2017] [State had no notice of dangerous condition and was entitled to qualified immunity for its highway planning decision]).
It is well established that, "[s]omething more than a mere choice between conflicting opinions of experts is required before the State . . . may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" (Weiss, 7 NY2d at 588). 
In the instant case, while both parties presented expert testimony, neither expert performed an accident reconstruction and thus the precise speed at which Stevens was traveling as he approached the intersection was not definitively established. Yet, both experts opined that Stevens did not have sufficient time to take evasive action to avoid the accident. Therefore, the Court finds that Stevens was not a contributing cause of the accident. Further, the Court finds that the credible evidence failed to establish that the accident was caused in whole or in part by the sight distances of Stevens or Cusimano being inhibited by grass, brush and/or foliage present on the date of the accident. In that regard, the Court finds the testimony of the State's expert to be persuasive regarding the sufficiency of the sight distances present at the scene for motorists traveling on Route 17 and approaching the intersection. Additionally, the photographs of the area, which were taken nine days prior to the accident, further support the testimony of the State's expert, along with Copistrano's written statement given to the Tuxedo Police Department on the date of the accident wherein he stated that he saw Stevens approaching the intersection on his motorcycle as the car in which he was traveling proceeded to turn left towards Arden Valley [*8]Road (Exs. 1-11; P).
The Court also finds that Cusimano's manner of driving, by admittedly beginning his left turn before reaching the gap between the two sets of double yellow lines on Route 17, inhibited his sight distance and not the State's alleged negligent maintenance of the grass, brush and foliage along Route 17 (see Duger v Estate of Carey, 295 AD2d 878 [3d Dept 2002] [The County's alleged negligence in failing to trim a hedgerow that blocked the mutual sight lines of motorists approaching the intersection was not a proximate cause of the accident because the recklessness of the motorist in driving past the stop sign with her eyes covered was the sole proximate cause of the accident and it was purely speculative that, but for the hedgerow, the oncoming motorist would have seen the other driver and taken evasive action; the Court also recognized that hedges, trees and shrubbery in close proximity to a roadway is to be expected in rural areas and does not create an unreasonable danger to a careful motorist]; Nurek v Town of Vestal, 115 AD2d 116 [3d Dept 1985] [The Town's alleged negligent maintenance of the trees was not a proximate cause of the accident where the driver could have stopped before commencing a left turn across oncoming traffic in a location where the trees would not have obscured the driver's vision]). In the case at bar, it is worth noting that both experts testified that the applicable safety guidelines for sight distances on Route 17 are calculated from the appropriate stopping point at the end of the double yellow line on Route 17. By Cusimano's own admission, he did not stop at the appropriate stopping point to make his left turn.
Thus, the evidence presented leads the Court to conclude that the sole proximate cause of the accident was the manner in which Cusimano operated his motor vehicle, his failure to observe that which was readily observable, and his failure to adjust his driving accordingly (see Cajas-Romero v Ward, 106 AD3d 850, 851 [2d Dept 2013] [Drivers have a duty to see what should be seen and to exercise reasonable care under the circumstances to avoid an accident]; D'Onofrio-Ruden v Town of Hempstead, 29 AD3d 512 [2d Dept 2006] [Even fully crediting testimony that stop sign was obscured by foliage, the driver was also negligent in her failure to see that which should have been seen through a proper use of her senses]; Wang v County of Rockland, 179 AD2d 977[3d Dept 1992] [Case dismissed at the conclusion of plaintiffs' case on the ground that plaintiffs failed to establish prima facie that defendants' negligence, if any, was a proximate cause of the accident; the appellate division affirmed the dismissal and concluded that the driver's manner of driving was the sole proximate cause of the accident]). In that regard, the Court finds the testimony of the State's expert to be compelling that Cusimano had sufficient time to act in a manner to avoid the accident and failed to take any evasive action.
Accordingly, the State's motion to dismiss the claim made at the conclusion of the trial, upon which decision was reserved, is hereby GRANTED and all motions not previously ruled upon are hereby DENIED.
LET JUDGMENT BE ENTERED DISMISSING CLAIM NO. 132013.

Footnotes

Footnote 1:The Court has, sua sponte, amended the caption to reflect the only proper party defendant.

Footnote 2:A Supreme Court action against John M. Cusimano, as the driver of the car, and John T. Cusimano, as the owner of the car, was resolved via a settlement (Stevens v Cusimano, Sup Ct, Orange County, Dec. 14, 2022, Hyer, J., index No. EF002973-2020).

Footnote 3:To the extent that the claim alleges negligent design and construction of Route 17, claimant indicated at trial and in his post-trial submission that the claim is limited to negligent maintenance and does not include a claim of negligent design and construction. In that regard, the Court further notes that any allegation that the State was required to maintain a 30 foot clear zone along Route 17 sounds in negligent design and construction and, in any event, the requirement of a 30 foot clear zone along Route 17 was refuted by the State's expert.